Geeen, J.
delivered the opinion of the court.
This is an action of ejectment, in the name of the State, for the use of schools, for a six hundred and forty acre tract of land in Grundy county.
The land in question was laid off for the use of schools, in 1807 or 1808, and was again surveyed in 1823, and a grant issued, for the use of schools, for the same, 8th March, 1825.
The defendants have been in possession of the land for many years, claiming it adversely; and they also *158 claim under an entry, in the name of John A. Wilson, Uriah York and Jesse Martin, dated 23rd August, 1826; and a grant issued thereon the 1st of June, 1827. The tract in question, is situated in a fractional township, six miles long and not more than three miles in width.
Several questions were made and adjudged in the court below, and are now pressed upon this court.
It is first insisted, that the surveyor had no authority to lay off a school tract in a fractional section; that he could only lay off such tract, in a section of six miles square; and that, if a tract for schools were laid off in a section containing an area of less than six miles square, the act was void, and the lands so laid off, were liable to be entered and appropriated by private individuals.
His Honor, the circuit judge, told the jury that the act of Congress, as well as the act of the Tennessee legislature, only authorized the surveyor to survey for the use of schools six hundred and forty acres of land in a section of six miles square; but if six hundred and forty acres had been surveyed in a half section, and a grant had issued therefor, for the use of schools, the State only could take advantage of it; and that private persons could not appropriate the land so laid off.
The act of Congress, approved the 18th of April, 1806, provides that, “the State of Tennessee shall moreover, in issuing grants, and perfecting titles, locate six hundred and forty acres to every six miles square in the territory hereby ceded, where existing claims will allow the same, which shall be appropriated for the use of schools for the instruction of children forever.” And in the act of the Tennessee legislature, of 1806, ch. 1, sec. 6, it *159 is provided, that “the principal surveyor shall cause to be laid off and surveyed, with plain marked lines, six hundred and forty acres of land, in one or more tracts, which shall be fit for cultivation and improvement, and which shall be as near the center of each section as existing claims, and the quality of the land will admit, which shall be appropriated for the use of schools for the instruction of children forever.”
It will be seen, that the act of Congress requires “six hundred and forty acres of land to every six miles square,” to be laid offer for schools. In complying with this stipulation, the legislature of the State of Tennessee were not restricted as to the manner the land should be laid off; nor were they restrained as to the quantity. The only requisition of the act of Congress, is that the' proportion of six hundred and forty acres, “to each six miles square” should be laid off for schools.
The act of the Tennessee legislature, of 1806, does not specify the area within which six hundred and forty acres shall be laid off, except by implication. It enacts, that six hundred and forty acres shall be laid off for schools; but within what boundary, is no where expressed; but the act provides, that it shall be as near “the center of each section, as existing claims, and the quality of the land will admit.”
We are, perhaps, scarcely authorized to assume that the legislature, by this language, have limited the surveyor, to lay off school land in entire sections only. If it were laid off in a fractional section, there would be a compliance with the words of the statute. And why shall it be said, that the intent and meaning of the statute, is, that all the sections in which school lands shall be laid off, must be six miles square? We know, *160 that in surveying the country, there were many fractional sections; some of them falling but little short of containing the full complement of six miles square. Now, if school land shall be laid off in none of these fractional sections, there would be a failure to comply with the requirements of the act of Congress; for it required that six hundred and forty acres should be laid off “to every six miles square;” that is, the proportion for schools, reserved, should be such as six hundred and forty acres bear to six miles square, or one-thirty-sixth. part of the whole territory, where existing claims would allow.
The legislature had no right to lay off for schools, less than the quantity stipulated in the act of Congress; but as we have seen, they were not restricted to that quantity; hence, if none were laid off in fractional sections, they would violate their duty; while, on the other hand, if a greater quantity were laid off, than was required by said act, no one could complain. In view therefore, of the obligations imposed by the act of Congress, and of the general language of the Tennessee ,-act, of 1806, using the term section only we are not prepared to concur with his Honor, in the opinion, that the surveyor was restricted to sections of full six miles square, within which to lay off a tract for schools.
But, be this as it may, we think his Honor was correct, when he said, that private persons could not take advantage of this excess of authority by the surveyor.
The act of the legislature is directory to the surveyor, and his acts are not void, although he may have failed in complying strictly with the provisions of the statute, under which he acted.
*161 An agent, in appropriating the property of his principal, may exceed his authority, so that the principal is not bound, but others have no right to question the act. If the principal acquiesces in, and ratifies the act, and the persons dealing with the agent, are claiming the benefit of the act, it is as valid as if it had been within the scope of the original, express authority. Certainly, third persons cannot question it, on the ground that they have made a subsequent purchase from other agents of the same principal.
In the case before us, the laud was re-surveyed in 1823, and granted for the use of schools in 1825. In 1826 the entry, under which the appellants claim, was made. These claimants have no right to question the authority of the surveyor in this case. Indeed, if the doctrine contended for were established, it would render void all titles, where the surveys have not been made in strict conformity to law; a consequence for which no one would contend.
The surveyor’s designation of school tracts, whether originally in strict conformity to law or not, cannot now be questioned; for the acts of 1807, ch. 2, sec. 41, (2 Hayw. and Cobbs, 64,) and 1823, ch. 49, sec. 26, (2 H. and C., 116,) have ratified, and made valid those surveys. The former act declares, that it shall not be lawful for any person to enter, survey, or obtain a grant for any tract of land theretofore surveyed or marked for the use of schools, and that any such entry or grant shall be null and void.
The act of 1823 provides, that lands surveyed for the use of schools ^should not be liable to appropriation under the said act.
*162 2. It is next insisted, that the defendants, by reason of their long continued possession of this land, may defend themselves; not indeed, by relying on the statute of limitations as a bar to the action; but on the ground that their possession for more than twenty years, affords a presumption that they have been in under a grant.
Whether time can operate against the State in any case, so as to afford presumption of a grant, is extremely questionable. Certainly, such presumption cannot arise in this case. The lands surveyed for the use of schools, were, by law, excluded from entry and appropriation by private individuals, and were appropriated for the use of schools for the instruction of children forever. If a grant has issued for these lands to an individual, it has issued contrary to law, and is void. If the State, by an express enactment, had authorized the sale, entry, or granting of these lands so laid off, their act would have been in violation of rights conferred by the act of Congress, and would have been void, and the titles acquired thereby would also have been void. If therefore, a grant actually issued, under the broad seal of the State, would have been void, and would have conferred no title; it is absurd to assume that a grant from the State will be presumed. We cannot presume that the State would do a void act; which would have been the case had a grant actually issued. And if we presume a grant, can the grant so- presumed, have greater validity than one actually issued? Such a sup. position is absurd. We should therefore, only presume a grant, to declare it void.
Affirm the judgment.